# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

CASE NO. _____

| | |
|---|---|
| ANDREW MACKMIN, *et al.*,<br><br>                        Plaintiffs,<br><br>      v.<br><br>VISA INC., *et al.*,<br><br>                        Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>No. 1:11-cv-01831-RJL |
| MARY STOUMBOS,<br><br>                        Plaintiff,<br><br>      v.<br><br>VISA INC., *et al.*,<br><br>                        Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>No. 1:11-cv-01882-RJL |
| NATIONAL ATM COUNCIL, INC., *et al.*,<br><br>                        Plaintiffs,<br><br>      v.<br><br>VISA INC., et al.,<br><br>                        Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>No. 1:11-cv-01803-RJL |

**DECLARATION OF CRAIG BRISKIN IN SUPPORT OF PLAINTIFFS'
MOTION FOR AN ORDER COMPELLING THIRD-PARTIES FIDELITY NATIONAL
INFORMATION SERVICES, FIDELITY INTEGRATED FINANCIAL SOLUTIONS,
AND ARMED FORCES FINANCIAL NETWORK TO PRODUCE DOCUMENTS**

      1.      I have personal knowledge of and can competently testify to the matters set forth herein.

2.  I am a partner at the law firm of Mehri & Skalet, PLLC. I am one of the attorneys representing Plaintiffs Andrew Mackmin and Sam Osborn in *Mackmin et al. v. Visa Inc., et al.*, No. 1:11-cv-01831 (D.D.C.) (*Mackmin* plaintiffs). My firm has been appointed interim co-lead counsel for the proposed consumer class.

3.  The *Mackmin* Plaintiffs allege that Visa's and Mastercard's member banks agreed to certain pricing restraints that have inflated the ATM surcharges that prevail in the marketplace. The *Mackmin* case has been coordinated for discovery purposes with two other cases, *Stoumbos v. Visa, Inc., at al.*, 11-cv-1882 (D.D.C.) and *National ATM Council Inc., et al. v. Visa, Inc., et al.*, No. 11-cv-1803 (D.D.C.), in which the plaintiffs challenge the same restraints. These cases are now pending before the Honorable Richard J. Leon in the United States District Court for the District of Columbia. True and correct copies of the operative complaints in the three coordinated cases are attached hereto as Exhibits A, B and C, respectively. The plaintiffs in the three coordinated cases are referred to herein as "Plaintiffs."

4.  In order to prevail on their motion for class certification and on the merits of their claims, Plaintiffs need to demonstrate the effect of Defendants' price-fixing agreement on ATM fees. There exist no clearinghouses or other public sources of data on ATM transactions. Thus, Plaintiffs must obtain as much ATM transaction data as they can from various third-parties. Together, the *Mackmin* and *Stoumbos* consumer Plaintiffs' claims encompass transactions routed over all ATM networks and at ATMs operated by various third-party banks and non-banks. ATM networks and ATM processors are the most comprehensive sources of that information, because they handle large volumes of transactions traveling between issuing banks and ATM operators throughout the United States and worldwide. AFFN, in particular, serves ATM operators throughout the United States. Further, transaction information from ATM processors

such as FIS may be the most comprehensive data source of all, because ATM processors handle transactions traveling over multiple ATM networks. That is why discovery from Fidelity National Information Services, Inc. ("FIS"), Fidelity Integrated Financial Services ("FIFS"), and Armed Forces Financial Network, LLC ("AFFN") is so important to Plaintiffs' case.

5. A Protective Order was entered in the coordinated cases on January 30, 2017. I attach it here as Exhibit D. The Protective Order includes a "Highly Confidential" designation for any material that is "so competitively sensitive that it is entitled to extraordinary protections." The Protective Order precludes disclosure of any materials designated "Highly Confidential" to in-house lawyers or other employees of any party. The Protective Order provides that, without the consent of the producing party or non-party, materials designated Highly Confidential may be disclosed only to (a) the Court; (b) outside counsel and their staff; (c) outside consultants, experts, or litigation support services; and (d) persons associated with "any person within categories (a) through (c) for whom access to Confidential Information is necessary to assist such persons in the action." *See id*. ¶¶ 17(a)-(e), 18. Further, the Protective Order prohibits the use of discovery materials for any purpose other than the coordinated litigation.

6. A total of four Subpoenas Duces Tecum have been served on AFFN in the three above-captioned matters. The subpoenas were issues by the following parties on the following dates:

   a. *January 12, 2018*. Defendants Mastercard Incorporated and Mastercard International Incorporated served a subpoena on AFFN with a production date of February 12, 2018. A true and correct copy of Mastercard's subpoena is attached hereto as Exhibit E.

   b. *January 31, 2018*. Plaintiffs in *Mackmin, et al. v. Visa, Inc., et al.* and *Stoumbos v. Visa, Inc., et al.* (collectively, the "Consumer Plaintiffs") jointly served identical subpoenas on AFFN with a production date of March 1, 2018. True and correct copies of the Consumer Plaintiffs' subpoenas are attached hereto as Exhibit F.

3

    c. *February 1, 2018*. Plaintiffs in *National ATM Council Inc., et al. v. Visa, Inc., et al.* ("ATM Operator Plaintiffs") served a subpoena on AFFN with a production date of March 5, 2018. A true and correct copy of the ATM Operator Plaintiffs' subpoena is attached hereto as Exhibit G.

7. The parties in the above-captioned matters also served four Subpoenas Duces Tecum on FIS:

    a. *February 7, 2018*. Plaintiffs in *National ATM Council Inc., et al. v. Visa, Inc., et al.* ("ATM Operator Plaintiffs") served a subpoena on FIS with a production date of March 9, 2018. A true and correct copy of the ATM Operator Plaintiffs' subpoena is attached hereto as Exhibit H.

    b. *February 23, 2018*. Plaintiffs in *Mackmin, et al. v. Visa, Inc., et al* served a subpoena on FIS with a production date of March 25, 2018. A true and correct copy of the *Mackmin* Plaintiffs' subpoena is attached hereto as Exhibit I.

    c. *February 23, 2018*. Plaintiffs in *Stoumbos v. Visa, Inc., et al* served a subpoena on FIS with a production date of March 27, 2018. A true and correct copy of the *Stoumbos* Plaintiffs' subpoena is attached hereto as Exhibit J.

    d. *March 12, 2018*. Defendants Mastercard Incorporated and Mastercard International Incorporated served a subpoena on FIS with a production date of April 12, 2018. A true and correct copy of Mastercard's subpoena is attached hereto as Exhibit K.

8. The Protective Order was appended to all of the above Subpoenas.

9. The foregoing subpoenas request targeted categories of documents and ATM data. The *Mackmin* Plaintiffs' subpoena to FIS specifically requested data and documents showing:

    a. "ATM fees, broken down by type (ATM Access Fee, ATM Interchange Fee, Foreign ATM Fee, ATM Switch Fee, ATM Network Fee, etc.)" imposed on ATM transactions processed by FIS for each quarter, *see* Ex. I Request No. 1;

    b. The number and dollar amounts of cash withdrawals processed by FIS for each quarter, *see* Ex. I Request No.1;

4

  c. "Any studies, analyses, calculations, reports, or presentations concerning competition between or among ATM networks," *see* Ex. I Request No. 4.

  d. "each ATM Acquirer" and "[u]nique identifying number for each ATM" for which FIS has processed transactions, *see* Ex. I Request No. 2;

  e. Schedules showing ATM Interchange Fees received from ATM Networks, *see* Ex. I Request No. 8;

10. On March 26, 2018, FIS served its Responses and Objections to the *Mackmin* subpoena. A true and correct copy of these Responses and Objections is attached hereto as Exhibit L.

11. FIS lodged general objections to the requests on the grounds of undue burden, breadth, relevance, proportionality, and trade secrets and confidentiality. For nine out of ten requests, FIS responded that, "preserving the foregoing objections," "FIS . . . does not have any documents responsive to this request." *Id*. For request No. 4, FIS objected on the basis that the request "seeks highly confidential, competitive intelligence" and that "FIS . . . is not producing any documents in response to this request." *Id*.

12. On March 30, 2018, the same counsel representing FIS also served AFFN's Responses and Objections to the *Mackmin*/*Stoumbos* subpoena. A true and correct copy of these Responses and Objections is attached hereto as Exhibit M. AFFN made similar general objections to the requests including objections to the extent the subpoena was vague, ambiguous, overly broad, unduly burdensome, oppressive, duplicative, or unreasonably cumulative. *Id.* at ¶ 2. It also objected based to any disclosure of trade secrets or confidential information. *Id.* at ¶ 4. AFFN incorporated its general objections into each of its fifteen responses and stated for twelve

5

of them that based on the "foregoing objections," "AFFN responds that it has no documents responsive to [the] Request[s]."

13. Also on March 30, 2018, AFFN made a very limited production of fee schedules. On May 16, 2018, AFFN produced excerpted operating regulations. AFFN's total production consists of thirteen pages. The fee schedules produced by AFFN show only certain fees, "interchange" fees, that AFFN imposed on transactions routed over its network. They do not, however, contain any information on ATM surcharges, and accordingly are of little use standing alone. Even as to interchange fees, the schedules produced by AFFN are deficient because AFFN's interchange rates differ by ATM transaction type and AFFN has supplied no data on the mix of transactions passing through its network. To date, AFFN has not produced any ATM fee data.

14. To minimize the burden on AFFN and FIS, the subpoenaing parties conducted joint meet-and-confers as to their data requests. These joint meet and confers addressed FIS and AFFN's subpoenas and separate (but identical) subpoenas directed to third party NYCE Payment Network, LLC ("NYCE"), an FIS subsidiary represented by the same counsel. The first such meet and confer, during which only the FIS subpoena was discussed, was held on April 2, 2018. Further joint discussions, during which subpoenas directed to FIS, AFFN, and later FIFS were discussed, were conducted on April 25, 2018 and May 16, 2018.

15. During these meet-and-confers, Plaintiffs' counsel explained the background of the antitrust cases from which the subpoenas arose, and that Plaintiffs were seeking data to develop economic models and to support anticipated motions for class certification. Among other things, Plaintiffs explained that the antitrust cases concern the relationship between

6

interchange fees and ATM surcharges. The current deadline to file class certification motions is September 28, 2018.

16. On April 2, 2018, counsel for *Mackmin* Plaintiffs and counsel for FIS (which also represents AFFN) held a telephonic conference at my request. Counsel for *Mackmin* Plaintiffs explained that Plaintiffs had issued subpoenas to FIS and AFFN based on their status as processors of ATM transactions. Regarding FIS, its counsel represented that FIS is "a holding company" that "doesn't actually operate." Counsel for FIS further indicated that Plaintiffs had subpoenaed the wrong Fidelity entity but would not disclose which entity was the proper recipient of Plaintiffs' subpoena.

17. Regarding FIS Request No. 4, concerning studies or analysis of competition among ATM networks, counsel for FIS stated that FIS would not produce any documents because the documents were competitively sensitive, and that FIS would stand on its trade secrets and confidentiality objections.

18. On April 13, 2018, I wrote a letter to counsel for FIS on behalf of *Mackmin* Plaintiffs. A true and correct copy of the April 13, 2018 letter is attached hereto as Exhibit N. I noted, among other things, that FIS's website stated, under the heading "ATM Processing & Solutions," that FIS offers "ATM driving, processing & monitoring services."

19. Further, FIS's 2018 10-K states that an FIS "segment" called Fidelity Integrated Financial Solutions (FIFS) "is focused primarily on serving . . . bank and saving institutions for transaction and account processing" and provides "Core Processing and Ancillary Applications," which "run banking processes for [FIS's] financial institution clients, including deposit and lending systems, customer management, and other central management systems" and "serv[e] as the system of record for processed activity." A true and correct copy of FIS's 2018 10-K is

attached hereto as Exhibit O. FIS's annual report states that FIS "serv[es] as the system of record for processed activity" for its clients. A true and correct copy of FIS's 2017 annual report is attached hereto as Exhibit P.

20. On April 25, 2018, counsel for FIS wrote a letter responding to *Mackmin* Plaintiffs' April 13 letter. A true and correct copy of FIS's April 25, 2018 letter is attached hereto as Exhibit Q. In the letter, FIS counsel stated that "FIS does not process ATM transactions, assess and collect ATM fees, or route ATM transactions, so it is not in possession of documents responsive to these requests." *Id*.

21. In this letter, counsel for FIS stated that any public representations about the role of FIS "in the ATM business" was made on behalf of "Fidelity National Information Services, Inc., a Georgia corporation, and its subsidiaries." *Id*. (emphasis in original).

22. Regarding the FIS "segment" called FIFS, counsel wrote that "it is common practice . . . for a parent company like FIS to consolidate the public reporting of its subsidiaries in a single filing." *Id*.

23. Regarding FIS Request No. 4, counsel for FIS wrote the following: "I disagree with your assertion that, during our meet and confer, I 'conveyed that, for Request Number 4, FIS does in fact possess *relevant* documents.' Rather, I simply agreed that in response to Request Number 4, FIS did *not* assert that it lacks responsive documents and noted that FIS stands on its objections." *Id*.

24. On April 25, 2018, counsel for *Mackmin* Plaintiffs and counsel for FIS and AFFN held a telephone conference at my request. During that phone call, Plaintiffs' counsel asked whether there was anything that Plaintiffs could do to accommodate FIS, such as modifying the

requests to eliminate particularly sensitive data. Counsel for FIS conveyed that there was nothing Plaintiffs could do.

25. On May 1, 2018, I reiterated *Mackmin* Plaintiffs' questions via email, querying whether the information on FIS's website – which seemed to indicate that FIS possessed information directly responsive to the subpoena - was incorrect. A true and correct copy of a May 1, 2018 email from me to Clair Wischusen, counsel for FIS, is attached hereto as Exhibit R.

26. On May 3, 2018, *Mackmin* Plaintiffs served a Subpoena Duces Tecum on a subsidiary of parent FIS - Fidelity Integrated Financial Solutions (FIFS) ("FIFS subpoena"). The requests for information were identical to those that had been served on parent company FIS. Other parties followed suit, for a total of three subpoenas served on subsidiary FIFS:

    a. *May 3, 2018: Mackmin* Plaintiffs served a subpoena on FIFS with a production date of June 2, 2018. A true and correct copy of the *Mackmin* Plaintiffs' subpoena is attached hereto as Exhibit S.

    b. *May 9, 2018*: ATM Operator Plaintiffs served a subpoena on FIFS with a production date of June 8, 2018. A true and correct copy of the ATM Operator Plaintiffs' subpoena is attached hereto as Exhibit T.

    c. *May 14, 2018:* Defendant Mastercard served a subpoena on FIFS with a production date of June 15, 2018. A true and correct copy of Mastercard's subpoena is attached hereto as Exhibit U.

27. *Mackmin* Plaintiffs chose to subpoena subsidiary FIFS based on the statements in FIS's 2018 10-K indicating that FIFS was responsible for banking processes and serving as the system of record for processed activity.

28. On May 16, 2018, counsel for NYCE, AFFN, and FIS provided a letter reconfirming that NYCE and AFFN objected to providing further production because of trade secret and confidentiality concerns. A true and correct copy of AFFN's May 16, 2018 letter is

attached hereto as Exhibit V. The letter informed all subpoenaing parties that they intended to "stand by [their] objections and responses and generally decline to further elaborate." *See id*.

29. Later during the day on May 16, 2018, *Mackmin* Plaintiffs' counsel held a telephone conference with counsel for NYCE, AFFN, and FIS. On that phone call, counsel for FIS indicated that they were not prepared to discuss the May 3 subpoena that had been served on FIFS, because FIFS involves different business people than FIS and responding to the subpoena may have different lawyers involved. Regarding the AFFN subpoena, Plaintiffs expressed a willingness to narrow their subpoena requests based on the data AFFN maintains in accessible form. AFFN's counsel declined to engage in that discussion, however, asserting that AFFN has an overarching trade secret objection to producing any of the requested data.

30. On May 24, 2018, the subpoenaing parties responded with a meet-and-confer letter and asked AFFN to confirm no later than May 31, 2018 whether it intended to withdraw its objection to the production of data. A true and correct copy of Plaintiffs' May 24, 2018 letter is attached hereto as Exhibit W.

31. On June 4, 2018, FIFS provided its Objections and Responses. A true and correct copy of these Objections and Responses is attached hereto as Exhibit X. For all ten requests, FIFS provided the same response: "Preserving the foregoing objections, FIFS responds that it does not have any documents responsive to this Request."

32. The same counsel representing FIS (and AFFN) also represents FIFS regarding *Mackmin* Plaintiffs' subpoenas.

33. On June 14, 2018, counsel for *Mackmin* Plaintiffs wrote a letter to counsel for FIS and FIFS. A true and correct copy of Plaintiffs' June 14, 2018 letter is attached hereto as Exhibit Y. *Mackmin* Plaintiffs' counsel sought to clarify whether FIS or FIFS have documents

responsive to any of Plaintiffs' requests and, if so, the basis of their refusal to produce them. *Mackmin* Plaintiffs reiterated the factual assertions contained in FIS and FIFS public filings that appear inconsistent with their representations that they have no responsive documents. *Mackmin* Plaintiffs also explained that FIS's trade secret objection should be no obstacle to the production of documents given the existence of a protective order in the *Mackmin* case, including a provision allowing producing parties to designate documents as "Highly Confidential" restricted to outside counsel.

34. In the June 14, 2018 letter, the *Mackmin* Plaintiffs' counsel also requested a telephone conference the following week, the week of June 18, 2018. *See id*. To date, counsel for FIS and FIFS have not replied to the letter.

35. On June 21, 2018, AFFN finally replied to Plaintiffs' May 24, 2018 letter and confirmed that it was not withdrawing its objections. In addition to claiming that the subpoenaed data amounted to trade secrets, AFFN's June 21 letter raised additional objections as to burden and need that were not the subject of prior meet and confers. AFFN claimed that there was "significant case law precluding discovery" of confidential information despite the existence of a protective order. A true and correct copy of AFFN's June 21, 2018 letter is attached hereto as Exhibit Z.

36. Plaintiffs have directed subpoenas to thirteen ATM networks and five ATM processors, in addition to FIS. Plaintiffs have engaged in constructive negotiations with all other third-party networks and processors, and have received or anticipate receiving data-rich productions from them.

37. NYCE is a wholly owned subsidiary of FIS and AFFN is partially co-owned by FIS. A true and correct copy of the April 26, 2018 email from Clair Wischusen to Plaintiffs'

11

counsel is attached hereto as Exhibit AA. Of the thirteen subpoenaed networks, only AFFN and NYCE have asserted a blanket trade secret or confidentiality objection to the production of data. *Mackmin* Plaintiffs also have filed a motion to compel the production of documents by NYCE. *See Mackmin et al v. NYCE Payments Network, LLC*, 2:18-cv-11517-ES-CLW (D.N.J.)

        38.     I understand that Payment Alliance International (PAI), an Independent Sales Organization ("ISO"), has identified FIS as an entity with whom it "partners" for "processing of ATM transactions." A true and correct copy of the June 15, 2018 letter from Payment Alliance International to Plaintiffs in the *Stoumbos, et. al. v. Visa, Inc., et al*. action is attached hereto as Exhibit BB.  Further, PAI explains that transactional data "relating to the processing of ATM transactions originates with [] processors" and that "transactional data should be obtained directly from [] processors, and not from" independent sales organizations such as PAI.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of July, 2018 in Bloomington, Indiana.

_____
Craig L. Briskin