**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CASE NO. 8:18-mc-00057-MSS-AAS**

| | |
|---|---|
| ANDREW MACKMIN, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>VISA INC., *et al.*,<br><br>　　　　　　　　　Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>No. 1:11-cv-01831-RJL |
| MARY STOUMBOS,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>VISA INC., *et al.*,<br><br>　　　　　　　　　Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>No. 1:11-cv-01882-RJL |
| NATIONAL ATM COUNCIL, INC., *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>VISA INC., et al.,<br><br>　　　　　　　　　Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>No. 1:11-cv-01803-RJL |

**STATUS REPORT**

Pursuant to the Court's September 28, 2018 Order, the parties respectfully submit the following Status Report concerning Plaintiffs' pending motion to compel subpoenaed documents from third parties Fidelity National Information Service, Inc. ("FNIS") and Armed Forces Financial Network ("AFFN").

**Plaintiffs' Preliminary Statement**

Since the parties' last Status Report, submitted November 2, Plaintiffs have continued their diligent efforts to resolve pending disputes without Court intervention. FNIS and AFFN, however, have elected to stand on their categorical objections to producing *any* data responsive to Plaintiffs' subpoenas (and in the case of FNIS, even a data sample). Given the critical need for third-party data in Plaintiffs' underlying cases, and the importance of the particular data FNIS and AFFN maintain, Plaintiffs are left with no option but to renew their motion to compel and request this Court's guidance.

Below, FNIS and AFFN attempt to justify their noncompliance by insinuating that Plaintiffs have somehow improperly disclosed AFFN's data sample. This accusation is false, and alarming. The "nine outside experts" are Plaintiffs' experts, who are bound by the Protective Order. The "six outside counsel" are appointed counsel of record for their respective classes, and AFFN produced the samples directly to four of those counsel. Each of these individuals is authorized to review AFFN's sample pursuant to the Court's September 28, 2018 Order. Dkt. No. 29 at 3-4; Sept. 27, 2018 Hr'g Tr. at 75-76. The suggestion that Plaintiffs improperly delayed identifying these recipients is equally baseless. The disclosure was made within three weeks of receiving AFFN's sample and neither FNIS nor AFFN ever suggested until now that this was somehow untimely.

### FNIS's and AFFN's Preliminary Statement

On November 9, Plaintiffs reported to AFFN for the first time that Plaintiffs have disclosed AFFN's October 19 highly confidential data sample to nine (9) outside experts and six (6) outside counsel. While this disclosure may be permitted by the existing Protective Order, it reinforces AFFN's confidentiality concerns that AFFN's most confidential business documents are in the hands of a veritable army of experts and lawyers. Notably, Plaintiffs waited three weeks to report this information, and only did so after being prompted by AFFN to comply with Plaintiffs' *self-reporting obligation* in the Court's September 28 Order (*i.e.*, "Plaintiffs must provide AFFN with a list of every person to whom it discloses this sample of Interchange Reports."). Indeed, Plaintiffs now claim it *is up to AFFN* to "timely" complain about Plaintiffs' failure to comply with self-reporting obligations under a Court Order, thus reinforcing the kinds of burdens Plaintiffs seek to place on non-party AFFN. Plaintiffs also recently notified AFFN that MasterCard is seeking access to AFFN's data sample, raising the possibility that MasterCard will move for production of this highly confidential information in the District of Columbia. Plaintiffs' failure to promptly comply with its self-reporting obligations after disclosing AFFN's highly confidential data to an army of experts and attorneys has only reinforced FNIS's and AFFN's grave confidentiality concerns about producing their most competitively sensitive information.

Critically, while Plaintiffs continue to assert the information sought from FNIS and AFFN is needed for their experts' analysis, Plaintiffs have never explained even the most rudimentary aspects of that analysis, much less provided an affidavit from any one of the *nine* (9) experts who have apparently already viewed AFFN's data sample. Thus, Plaintiffs still have not met their burden by explaining how FNIS's and AFFN's confidential data is supposedly

"necessary" to Plaintiffs' expert analysis.  Further, FNIS and AFFN continue to have burden concerns illustrated by the fact that it took AFFN fifteen (15) hours just to produce the six sample data reports.

**I.     FNIS Status**

**Plaintiffs' Position**

In Amended Objections and Responses served October 8, FNIS identified for the first time the particular FNIS subsidiaries that perform ATM processing and possess ATM data responsive to Plaintiffs' subpoenas.  *See* Ex. A.  During the parties' ensuing meet-and-confer, conducted October 16, FNIS' counsel indicated that FNIS was not categorically opposed to producing data, provided some compromise could be reached as to the scope of Plaintiffs' requests.  To facilitate that discussion, Plaintiffs requested that FNIS produce a small sample of its responsive data, which, according to FNIS, are kept in both transactional and billing formats.  The purpose of sampling, Plaintiffs explained, was to minimize burden by focusing the parties' discussions pragmatically on the particular data elements FNIS maintains.

After taking Plaintiffs' sampling request under consideration, FNIS cancelled multiple follow-up meet-and-confers only to then inform Plaintiffs on November 12 that FNIS would not produce samples unless Plaintiffs "first provide[d] to [FNIS] the data fields that they (and their experts) believe should exist" in FNIS' databases.  Having no visibility into FNIS' databases, Plaintiffs advised FNIS that this was not a sensible or efficient means of progressing negotiations.  But in the interest of making progress, Plaintiffs promptly provided FNIS with a list of necessary data fields that have appeared in different combinations in other party and third-party data productions.  Plaintiffs further specified that, because Plaintiffs are aggregating data

3

across multiple sources, databases containing any of the listed data elements are substantially needed for Plaintiffs' analyses.

Without denying that its billing and transactional databases contain fields Plaintiffs are pursuing, FNIS stated on November 14 that it would not provide Plaintiffs with data samples, or any responsive material at all. As to sampling, FNIS indicated that it had "confidentiality concerns," disregarding this Court's September 28 Order requiring AFFN to produce a data sample over identical confidentiality objections.

FNIS contends below that Plaintiffs are under a continuing obligation to demonstrate the relevance and need for ATM transaction data in their cases. Plaintiffs have already done so in their written submissions to this Court, and have now further elaborated, as FNIS requested, as to the particular data fields they are seeking. This is not a basis on which FNIS can categorically refuse to produce data.

**FNIS's Position**

In compliance with the Court's September 28 Order, FNIS timely served Amended Objections and Responses and offered to meet and confer with Plaintiffs. While FNIS's counsel was constrained to cancel two calls with Plaintiffs' counsel because FNIS's main business contact was unexpectedly out of the office, FNIS's counsel continued to meaningfully confer with Plaintiffs by email. FNIS firmly disagrees with Plaintiffs' representation that FNIS' counsel "indicated" during the meet and confer "that FNIS was not categorically opposed to producing data." FNIS further disputes Plaintiffs' contention that FNIS agreed to produce data samples on any basis, and certainly not by Plaintiffs' arbitrary November 19 deadline. Rather, FNIS suggested as part of the meet and confer efforts that Plaintiffs' identify what data is absolutely necessary to Plaintiffs' expert analyses. After careful consideration of Plaintiffs'

response (including Plaintiffs' lack of detailed explanation as to the necessity of the information), FNIS declined to agree to produce data samples. FNIS remains troubled by Plaintiffs' continuing failure to explain how FNIS's data is *necessary* (and not merely relevant) to their experts' analysis (something which Plaintiffs' have never adequately explained), as well as the prospect of having to continually monitor Plaintiffs' disclosure of FNIS's confidential data to an army of outside experts and attorneys.

## II.     AFFN Status

**Plaintiffs' Position**

The Court-ordered sample of Interchange Reports AFFN produced on October 19 contain detailed interchange fee data that are relevant, responsive, and substantially needed for the economic analyses Plaintiffs intend to conduct in their underlying cases. Although AFFN had previously indicated that these reports "intermixed" ATM and point-of-sale (POS) data, *see* Dkt. No. 9-11, ¶ 50(b), AFFN clarified on November 12 that the ATM data contained in the reports is segregated. Having received that and other clarification from AFFN, Plaintiffs requested on November 13 that AFFN produce its Interchange Reports for the five years they are available.

On November 14, AFFN refused to produce any Interchange Reports. AFFN's stated ground was that Plaintiffs supposedly had not shown a "substantial need" for the reports, an objection that this Court previously held was not among AFFN's "most convincing objections to the subpoenas." Dkt. 29 at 2. AFFN also indicated on November 14 that it was standing on all other objections it has asserted in response to Plaintiffs' subpoenas.

AFFN complains below of the burden of manually redacting POS information in its sample, but as Plaintiffs pointed out in their briefing, redactions for relevance are not permitted or required. *See* Dkt. No. 17 at 19-20. AFFN already has demonstrated a penchant for

5

overstating its costs, estimating a cost of $1 billion to provide data that a multitude of other third parties have managed to produce without even a request of cost-shifting. Dkt. No. 9 at 33. And as Plaintiffs have pointed out, if AFFN believes that cost-shifting is merited here, it has the burden of isolating "reasonably incurred" expenses. Dkt. No. 17 at 20-21. It has not done so, and certainly cannot use unreasonably incurred expenses as a basis to produce no data at all.

### AFFN's Position

In compliance with the Court's Order, on October 19 AFFN timely produced the agreed upon sample of its Interchange Reports. Thereafter, AFFN continued its dialogue with Plaintiffs by responding in detail to various questions posed by Plaintiffs regarding the Interchange Reports.[1]

AFFN's production of this highly confidential information only served to underscore AFFN's concerns with Plaintiffs' requests. Beginning with AFFN's burden concerns, because the Interchange Reports are not in AFFN's production system, they needed to be manually restored which takes between 12-24 hours for these particular reports. In addition, because ATM transactions are intermixed with POS transactions (which AFFN believes the Court found were not relevant at all), each Interchange Report had to be manually redacted. The redactions are required not merely for relevance, but also for confidentiality and PCI DSS requirements. As a result, it took AFFN employees approximately 15 hours to produce just these six reports. AFFN simply does not have the personnel (6 AFFN employees) to devote to producing even a fraction

---

[1] Rather than acknowledge AFFN's good faith efforts, Plaintiffs suggest above that AFFN misstated that its Interchange Reports "intermix" point-of-sale (POS) transactions and ATM transactions. Plaintiffs' attempt to discredit AFFN is rejected. Plaintiffs take out of context AFFN's response to Plaintiffs' inquiry as to whether the *non-redacted portions* of the Interchange Reports intermix ATM and POS transactions. Plaintiffs ignore the fact that the whole reason the Interchange Reports were redacted is because the reports intermix ATM and POS transactions.

of the data requested by Plaintiffs. The burdens set forth in detail in the Broda Declaration were verified by the exercise of producing even this limited sample of reports. *See* ECF # 9-11 at ¶ 50.b. There is no evidence in the record of what burdens have been placed on other third parties subpoenaed by Plaintiffs. In any event, as detailed in the Broda Declaration, AFFN's burdens are unique in that their reports and data are not kept in a fashion that is easily searchable or subject to manipulation, and AFFN has only six (6) employees and no one available to devote full time to complying with Plaintiffs' broad and intrusive requests.

AFFN's data production also served to underscore AFFN's confidentiality concerns, which have been heightened by Plaintiffs' belated admission that no less than nine experts and six attorneys have already reviewed AFFN's highly confidential information. AFFN is now left to rely upon Plaintiffs' self-reporting responsibilities to ensure that AFFN's most competitively sensitive information does not wind up in the hands of its most significant competitors. Further troubling is that even after reviewing AFFN's highly confidential data, Plaintiffs still have not articulated how this information is allegedly necessary for their experts' analyses. Accordingly, Plaintiffs' request for any additional Interchange Reports should be denied.

### III.     Proposal for Further Proceedings

**Plaintiffs' Position**

Given the voluminous briefing already submitted in connection with these proceedings, Plaintiffs believe outstanding disputes can be most efficiently addressed in a telephonic status conference with the Court. If the Court prefers supplemental briefing, Plaintiffs respectfully request that it be scheduled on an expedited timetable. As the Court is aware, the data at issue is being pursued for class certification motions. Those motions are now due April 12, 2019 and, by Court Order, that deadline is predicated on Plaintiffs obtaining by December 31, 2018 all

"necessary data from third parties in response to plaintiffs' subpoenas." *Mackmin et al. v. Visa et al.*, 11-cv-1831 (D.D.C.), Dkt. No. 146, ¶ 3 (Nov. 6, 2018 Order) (Ex. B). If Plaintiffs do not obtain by December 31 third-party data they believe is necessary, Plaintiffs may request, but are not assured, an extension. *See id.*

### FNIS's and AFFN's Statement

AFFN believes that the pending motion, taken under submission, should now be denied. There is no motion relating to FNIS pending. If Plaintiffs' proposal for a telephonic status conference with the Court is accepted, AFFN and FNIS respectfully request that the call be scheduled after the Thanksgiving holiday because in-house counsel who plans to participate in the call (and was personally present at the September 28 hearing) is out of the office until November 26.

DATED this 16th Day of November 2018   Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Ben M. Harrington*
    Ben M. Harrington
715 Heart Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3034
benh@hbsslaw.com

Janet R. Varnell (Bar # 71072)
VARNELL & WARWICK
PO Box 1870
Lady Lake, Florida 32158
Telephone: (352) 758-8600
jvarnell@varnellandwarwick.com

*Of Counsel:*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292

steve@hbsslaw.com

Jennifer Fountain Connolly
(D.C. Bar No. 1019148)
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 248-5403
jenniferc@hbsslaw.com

Stephen R. Neuwirth
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson
Viola Trebicka
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
adamwolfson@quinnemanuel.com
violatrebicka@quinnemanuel.com

Craig L. Briskin
Joanna K. Wasik
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
cbriskin@findjustice.com
jwaisk@findjustice.com

*Counsel for Andrew Mackmin and Sam Osborn*

Douglas G. Thompson (D.C. Bar # 172387)
dthompson@finkelsteinthompson.com
Michael G. McLellan (D.C. Bar # 489217)
mmclellan@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
3201 New Mexico Ave. NW, Suite 395
Washington, DC 20016
Telephone: 202-337-8000

Facsimile: 202-337-8090

Christopher Lovell
clovell@lshllp.com
Merrick Scott Rayle
mrayle@lshllp.com
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway Suite 501
New York, NY 10006
(212) 608-1900
Fax: (212) 719-4775

*Counsel for Mary Stoumbos*

Jonathan L. Rubin
MOGINRUBIN LLP
1615 M Street, NW, Third Floor
Washington, D.C. 20036
Tel: (202) 630-0616
Fax: (877) 247-8586
jrubin@moginrubin.com

Jennifer M. Oliver
MOGINRUBIN LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 798-5361
Fax: (619) 687-6610
joliver@moginrubin.com

*Counsel for Plaintiffs the National ATM*
*Council, Inc.; ATMs of the South, Inc.;*
*Business Resource Group, Inc.;*
*Just ATMs USA, Inc.; Wash Water Solutions,*
*Inc.; ATM Bankcard Services, Inc.; Selman Telecommunications Investment Group, LLC;*
*Scot Gardner d/b/a SJI; Turnkey ATM Solutions, LLC; Trinity Holdings Ltd, Inc.; and T&T*
*Communications, Inc. and Randal N. Bro d/b/a*
*T & B Investments*

Dated: November 16, 2018

                    FOX ROTHSCHILD LLP

                    By:*/s/ Michael Eidel*
                    Michael Eidel (pro hac vice)
                    Clair E. Wischusen (pro hac vice)
                    FOX ROTHSCHILD LLP
                    2700 Kelly Road, Suite 300
                    Warrington, PA 18976
                    Telephone: (215) 345-7500
                    Facsimile: (215) 345-7507
                    meidel@foxrothschild.com
                    cwischusen@foxrothschild.com

                    Heather Ries (Florida Bar No. 581933)
                    FOX ROTHSCHILD LLP
                    777 South Flagler Drive, Suite 1700
                    West Palm Beach, FL 334-1
                    Telephone: (561) 835-9600
                    Facsimile: (561) 835-9602
                    hries@foxrothschild.com

                    Amy L. Drushal (Florida Bar No. 546895)
                    TRENAM, KEMKER, SCHARF, BARKIN,
                    FRYE, O'NEILL & MULLIS, P.A.
                    101 E. Kennedy Boulevard, Suite 2700
                    Tampa, FL 33602
                    Telephone: (813) 223-7474
                    adrushal@trenam.com

*Attorneys for Non-Parties Fidelity National Information Services, Inc., Fidelity Integrated Solutions, and Armed Forces Financial Network, LLC*

11

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

By: */s/ Ben M. Harrington*
 Ben M. Harrington
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Heart Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3034
benh@hbsslaw.com